VIRGINIA:

IN THE CIRCUIT COURT OF ROCKINGHAM COUNTY

| | |
|---|---|
| LISA N. GOODNIGHT, </br></br> Plaintiff, </br></br> v. </br></br> DYNAMIC AVIATION GROUP, INC., d/b/a DYNAMIC AVIATION, </br></br>     SERVE:   Karl D. Stoltzfus </br>                  Registered Agent </br>                  Highway 727 </br>                  Bridgewater Airport </br>                  Bridgewater, VA 22812 </br></br> Defendant. | Case No. CL19-316 </br></br> FILED IN THE CLERK'S OFFICE </br> ROCKINGHAM COUNTY, VA </br></br> JAN 17 2019 </br></br> Heather Reardon DEPUTY CLERK |

## COMPLAINT

COMES NOW the Plaintiff, Lisa N. Goodnight ("Ms. Goodnight" or "Plaintiff"), by undersigned counsel, and the law firm of Cook Craig & Francuzenko, PLLC, and hereby states as follows:

### NATURE OF THE CASE

1. This is an action brought by Plaintiff against Defendant under Title VII of the Civil Rights Act of 1964 ("Title VII"), §§ 701, *et seq.*; 42 U.S.C. §§ 2000e, *et seq.* as amended, by for discrimination based on sex, hostile work environment based on sex, and retaliation.

### JURISDICTION AND VENUE

2. This Court has jurisdiction over the Defendant pursuant to Va. Code § 8.01-328.1 because, among other things, it transacts business in Virginia and the Complaint's allegations of

1



Title VII violations occurred in Virginia. *See Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 826 (1990) (state and federal courts have concurrent jurisdiction over Title VII claims).

3. Venue is proper in this Court pursuant to Va. Code § 8.01-262 because the causes of action arose in Rockingham County, Virginia.

4. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") on or about April 19, 2018. Plaintiff was issued a notification of her rights to sue on December 13, 2018.

5. Plaintiff filed an additional charge of discrimination with the EEOC on or about October 9, 2018. Plaintiff was issued a notification of her rights to sue on October 25, 2018.

## PARTIES

6. Ms. Goodnight is a 46 year old female resident of Shenandoah, Virginia.

7. Upon information and belief, Defendant Dynamic Aviation Group, Inc., d/b/a Dynamic Aviation ("Dynamic") is a Virginia Corporation with its principal place of business at 1402 Airport Road, Bridgewater, Virginia 22812.

## FACTUAL BACKGROUND

8. In or around September 2015, Dynamic hired Ms. Goodnight as a temporary employee.

9. In or around December 2015, Ms. Goodnight became a fulltime employee with Dynamic.

10. Ms. Goodnight worked as an environmental compliance specialist.

11. Generally, as an environmental compliance specialist she was to assist in ensuring compliance with applicable regulations regarding environmental protection.

12. In early 2017, a Dynamic employee continually subjected Ms. Goodnight to sexual advances.

13. On an almost daily basis, the Dynamic employee called Ms. Goodnight "sweetie" or "cream puff."

14. On an almost daily basis, the Dynamic employee made physical contact by trying to put his arm around Ms. Goodnight's waist or trying to hug her.

15. The Dynamic employee requested hugs multiple times a week.

16. On at least one occasion the Dynamic employee touched Ms. Goodnight's buttocks.

17. On at least one occasion the Dynamic employee tried to hold Ms. Goodnight's hand.

18. On an almost a daily basis, the Dynamic employee made comments about Ms. Goodnight's clothing.

19. The Dynamic employee had told Ms. Goodnight that the breasts were his favorite part of a woman.

20. They Dynamic employee parked his vehicle near Ms. Goodnight's.

21. The Dynamic employee told Ms. Goodnight that he drove through her neighborhood and considered knocking on her when he spotted her vehicle.

22. The advances were unwanted and rejected by Ms. Goodnight.

23. The advances caused Ms. Goodnight to become physically upset multiple times a week.

24. In or around June 2017, Ms. Goodnight reported the employee's unwanted conduct to her supervisor.

3

25. Despite Ms. Goodnight reporting the unwanted conduct, the unwanted advances continued.

26. On or about August 28, 2017, Ms. Goodnight reported the unwanted conducted, again, to her supervisor and to human resources.

27. The unwanted conduct continued in October and November and Ms. Goodnight, again, reported to it to human resources.

28. During this period, Ms. Goodnight actively attempted to perform the duties of her job in a manner to avoid contact and interactions with the employee.

29. However, the employee often found Ms. Goodnight in the parking lot near her car where Ms. Goodnight was unable to avoid the interaction.

30. On or about December 14, 2017, the Sheet Metal Department Lead made a joke about the fact that there was sexual harassment going on in the department.

31. Ms. Goodnight reported the joke to the Chief Operating Officer.

32. After Ms. Goodnight has reported the unwanted conduct and made complaints of sexual harassment, the males in the Sheet Metal Department stopped speaking to Ms. Goodnight.

33. This made it nearly impossible for Ms. Goodnight to perform the functions of her job.

34. Ms. Goodnight began to experience severe stress and anxiety which was interfering with her thought processes and ability to reason.

35. As a result of the discrimination, Ms. Goodnight could not perform her job and went out on leave.

36. After Ms. Goodnight exhausted her leave, Dynamic terminated her.

## COUNT I
### (Title VII – Hostile Work Environment Based on Sex)

37. Plaintiff restates and re-alleges the allegations contained in the proceeding paragraphs of the Complaint as if fully set forth herein.

38. Plaintiff was a member of a class protected by Title VII of the Civil Rights Act of 1964, that is, female.

39. Plaintiff suffered abusive and discriminatory treatment at the hands of her co-workers because of her gender.

40. Plaintiff was performing her job duties at a level that met Dynamic's legitimate expectations at the time of her termination.

41. The conduct Plaintiff suffered at the hands of her co-workers was unwelcome, including, but not limited to, physical contact, lewd conversations, lewd requests, comments about her looks, and refusal to speak with her about work.

42. All of the male employees in the Sheet Metal Division stopped speaking with and began ignoring Plaintiff.

43. There were no other male employees that the employees in the Sheet Metal Division treated this way.

44. This conduct made it nearly impossible for Plaintiff to perform the duties of her job, thus, changing the terms and conditions of her employment.

45. Plaintiff reported the discrimination but it continued.

46. Plaintiff's co-worker's harassment was sufficiently pervasive to alter the terms and conditions of Plaintiff's employment at Dynamic and also created an abusive work environment.

47. The conduct Dynamic's employees should be imputed to Dynamic because Plaintiff reported the discriminatory and offensive conduct to Dynamic, yet Dynamic failed to take prompt and sufficient corrective action to alleviate Plaintiff's hostile work environment.

48. As a result of Dynamic's hostile work environment, Plaintiff was unable to perform the duties of job and went out on leave.

49. As a result of Dynamic's hostile work environment, Plaintiff suffered, and continues to suffer, embarrassment, emotional distress, loss of self-esteem, anxiety, incurred medical expenses, and past and future wage loss.

## COUNT II
### (Title VII – Retaliation)

50. Plaintiff restates and re-alleges the allegations contained in the proceeding paragraphs of the Complaint as if fully set forth herein.

51. Plaintiff engaged in protected activity under Title VII when she reported incidents of harassment based on gender to her supervisors and human resources.

52. Plaintiff further engaged in protected activity under Title VII when she filed a charge of discrimination with the EEOC.

53. Plaintiff's complaints of gender discrimination caused the Sheet Metal Department Lead to joke about her complaints and all of the males in the department to shun her.

54. In order to perform the duties of her job, Plaintiff had to communicate with the employees in the Sheet Metal Division.

55. Plaintiff's complaints of gender discrimination were a substantial and motivating factor in the decision to terminate Plaintiff's employment on October 18, 2018.

6

56. As a result of Dynamic's retaliation, Plaintiff suffered, and continues to suffer, embarrassment, emotional distress, loss of self-esteem, anxiety, incurred medical expenses, and past and future wage loss.

57. As a result of Dynamic's retaliation Plaintiff was unable to perform the duties of job and went out on leave.

58. After Ms. Plaintiff exhausted her leave, Plaintiff continued to suffer embarrassment, emotional distress, loss of self-esteem, anxiety from the discrimination and Dynamic terminated her.

59. As a result of the discrimination, Plaintiff incurred medical expenses as well as past and future wage loss.

**PRAYER FOR RELIEF**

WHEREFORE, the plaintiff, Lisa Goodnight, demands judgment against the defendant, Dynamic Aviation Group, Inc., d/b/a Dynamic Aviation, as follows on all Counts:

(a) Lost wages in excess of $38,000.00 or in an amount to be proven at trial;

(b) $38,000.00 in future lost wages;

(c) $300,000 in compensatory damages for violations of Title VII;

(d) $300,000 in punitive damages for violations of Title VII;

(e) Plaintiff's attorneys' fees and court costs as provided by 42 U.S.C. § 2000e-5(g)(2)(B)(i);

(f) Pre- and post-judgment interest; and

(g) All other further relief that this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury on all issues so triable.

Respectfully submitted,

_____
John C. Cook, VSB 38310
Philip C. Krone, VSB 87723
Cook Craig & Francuzenko, PLLC
3050 Chain Bridge Road, Suite 200
Fairfax, VA 22030
Phone: (703) 865-7480
Fax: (703) 434-3510
jcook@cookcraig.com
pkrone@cookcraig.com
*Counsel for Plaintiff*